MOTORISTS MUTUAL INSURANCE COMPANIES, APPELLEE, *v.* HANDLOVIC ET AL., APPELLANTS.

[Cite as Motorists Mut. Ins. Co. *v.* Handlovic (1986), 23 Ohio St. 3d 179.]

(No. 85-185—Decided April 30, 1986.)

*Weston, Hurd, Fallon, Paisley & Howley, John M. Baker, Warren M. Rosman* and *Mark O'Neill,* for appellee.

*Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., Leon M. Plevin, David M. Paris* and *Joel Levin,* for appellants.

SWEENEY, J. In *Universal Underwriters Ins. Co.* v. *Shuff* (1981), 67 Ohio St. 2d 172 [21 O.O.3d 108], this court held in the syllabus:

"An insured who seeks to recover damages from his insurer under an uninsured motorist policy and is unsuccessful after a trial on the merits and a jury verdict, may not thereafter submit to arbitration the issue of the liability of the uninsured motorist. (R.C. 3937.18, applied.)"

Appellants contend that *Shuff* can be distinguished from the instant case because Motorists, unlike the insurance company in *Shuff,* was not named as a party in the insureds' action against the underinsured motorist; and, as a result of its non-party status, Motorists' failure to furnish "written consent" to the prosecution of the Handlovics' action against Ballantyne precludes the application of *res judicata* principles to the Handlovics' demand for arbitration. In support of this contention, the appellants rely on Part I of their "Uninsured Motorist Coverage,"[1] which provides in relevant part:

"No judgment against any person * * * alleged to be legally responsible for the bodily injury [sustained by the insured] shall be conclusive, as between the insured and the [insurance] company, of the issues of liability of such person * * * or of the amount of damages to which the insured is legally entitled *unless* such judgment is entered pursuant to an action prosecuted by the insured with the *written consent* of the [insurance] company." (Emphasis added.)

Based on the foregoing contractual language, appellants state that they have a right to proceed to arbitration under Paragraph F, Part VI of their underinsured motorist coverage, which provides in part:

"If any person making claim hereunder and the [insurance] company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then, upon written demand of either, the matter * * * shall be settled by arbitration * * *."

While it is true that the instant case is factually distinguishable from *Shuff,* it is not legally distinguishable therefrom. Our analysis in *Shuff* focused on the statutory purpose of uninsured motorist coverage, which is to provide protection for "persons * * * who are *legally entitled to recover damages* from owners or operators of uninsured motor vehicles * * *." (Emphasis added.) R.C. 3937.18(A). (Subsequent to the events that form

---

[1] The terms of Motorists' "Uninsured Motorist Coverage" were made applicable, by endorsement, to underinsured motorists. See footnote 3, *infra.*

the basis of the appellants' demand for arbitration, R.C. 3937.18 was amended and the foregoing language is now found in R.C. 3937.18[A][1].) The insurance policy at issue in *Shuff* and the policy at issue herein contained language that duplicates the statutory language set forth above. These policies both provide:

"The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle * * *."

Thus, pursuant to statute and contract, Motorists' liability to the appellants herein was dependent upon the appellants' ability to establish a legal entitlement to damages that exceeded the limits of liability in William Ballantyne's policy of insurance. While an insured may be able to establish a legal entitlement to damages from an underinsured motorist by means other than a lawsuit against the underinsured motorist, a final judgment rendered as a result of such a lawsuit generally will be conclusive as between the insured and his insurer, regardless of whether the insurer has consented to the prosecution of the lawsuit. An insurer may not avoid a valid judgment obtained by an insured against an underinsured motorist *solely* because the insurer did not provide written consent to the prosecution of the action resulting in the judgment. Likewise, an insured who has obtained a valid judgment against an underinsured motorist generally may not avoid the limits of that judgment when seeking payment under the terms of his underinsured motorist coverage. If an insured, in good faith, prosecutes a lawsuit against an underinsured motorist with the knowledge of the insured's insurance company, generally *both* the insured and his insurance company are bound by any final judgment rendered as a result of such lawsuit that determines the liability of the underinsured motorist to the insured.[2]

Appellants herein obtained a judgment against Ballantyne in amounts that were within the limits of Ballantyne's liability coverage. Appellants did not claim that Ballantyne's insurer failed to satisfy this judgment, and no other evidence in the record indicates that Ballantyne was an "underinsured motorist" as that term is defined under the appellants' uninsured motorist coverage.[3] For these reasons, and because the judgment against

---

[2] Cf. *Thiel* v. *Allstate Ins. Co.* (1986), 23 Ohio St. 3d 108 (insurer obligated to provide uninsured motorist coverage to insured in spite of the uninsured motorist's conditional immunity from liability under workers' compensation statutes).

[3] An endorsement to the insurance policy issued by Motorists provides that "* * * the definition of 'uninsured highway vehicle' * * * is amended to include 'underinsured highway vehicle' * * *." The endorsement provides further:

" '[U]nderinsured highway vehicle' means a highway vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under this insurance.

"* * *

"* * * The company shall not be obligated to make any payment because of bodily injury

Ballantyne conclusively determined the *full extent* of the appellants' legal entitlement to damages, no purpose is served by requiring Motorists to comply with the appellants' demand for arbitration in this case.

"* * * [A]lthough the doctrine of *res judicata* does not directly prohibit * * * [appellants] from insisting on arbitration, the doctrine does dictate the necessary result." *Shuff, supra,* at 174. "* * * [E]ven if * * * [appellants] compelled * * * [Motorists] to arbitrate this matter and received a damage award [in excess of that received as a result of their action against Ballantyne], that result would clearly be erroneous and contrary to law under the doctrine of *res judicata.* * * * [Motorists] would then be entitled to undertake another proceeding to reinstate the [original] jury verdict [against Ballantyne]. After all this, the parties would be exactly where the * * * [original judgment] left them. Arbitration, in this case, would be a 'vain thing,' and the well-settled policy of caution is expressed by the maxim, 'equity will not decree a vain thing.' *Watterson* v. *Ury* (1891), 5 C.C. 347, 360, affirmed 52 Ohio St. 637. Therefore, under the terms of this insurance policy, * * * [Motorists] may refuse to arbitrate." *Id.*

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., LOCHER and C. BROWN, JJ., concur.

HOLMES, J., concurs in judgment only.

DOUGLAS and WRIGHT, JJ., concur in judgment only, with opinion.

DOUGLAS, J., concurring. While I concur in the judgment of the majority, because it reaches the right result, I write separately to express my concern with the syllabus of the majority and some of the language contained in the opinion. In addition, an issue that has been brought to us for decision is not discussed by the majority and I feel the issue should be addressed.

The language used by the majority in the syllabus and body of the opinion simply wipes out the right of parties to contract and to be bound by their agreement once made. Here the language of the policy was clear. In pertinent part, the policy of insurance says:

"No judgment against any person * * * alleged to be legally responsible for the bodily injury [sustained by the insured] shall be conclusive, as between the insured and the [insurance] company, of the issues of liability of such person * * * or of the amount of damages to which the insured is

---

to which this insurance applies and which arises out of the ownership, maintenance or use of an underinsured highway vehicle until after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements."

legally entitled *unless* such judgment is entered pursuant to an action prosecuted by the insured with the *written consent* of the [insurance] company." (Emphasis added.)

Today's opinion makes this language inoperative. Henceforth, despite such limiting language in the policy of insurance, the insurer will be bound by any judgment rendered as a result of a suit brought by the insured against an uninsured or underinsured motorist even though the action was brought by the insured without first having obtained the written consent of his insurer. This places an insurance carrier in a hopeless position. For example, an insured could bring an action against an uninsured motorist, obtain a default judgment when the uninsured motorist fails to answer, and then receive an award of judgment that may be excessive. Under today's decision, the insured's carrier would be liable, without the right to contest, for the judgment obtained by its insured. Such a result is patently unfair. Just because a party before this court is an insurance company does not mean it should automatically be treated unfairly.

The real issue raised by appellants in this case is that they, as insureds, should not have to obtain the permission of their own carrier before they can settle with an underinsured motorist and his insurance company. Appellants contend that they had a settlement agreement worked out with the tortfeasor's carrier for the policy limits of $25,000 in return for a full and final release. Appellants contend that appellee prevented the settlement by refusing to permit appellants to sign a full release and thereby forced appellants to file their lawsuit against the tortfeasor.

Appellants' argument lacks merit for two reasons. First, if appellants had been permitted to give the tortfeasor a full and final release in exchange for the payment of the $25,000 and then in a later arbitration proceeding with their own carrier (appellee) appellants had been awarded a sum in excess of the $25,000, appellee would have had no subrogation rights against the tortfeasor. In addition, if appellee had consented to the alleged settlement between appellants and the tortfeasor, appellee would have automatically admitted liability to appellants and all that would have remained to be determined through negotiation or arbitration would have been how much appellee would be required to pay appellants pursuant to the underinsured motorist coverage. Once again, this would place the carrier (appellee) in a hopeless position.

The second reason appellants' argument lacks merit is that appellants could have initially demanded, if they felt that the tortfeasor's insurance coverage was inadequate to compensate them for their damages, arbitration under the terms of their own policy with appellee. This appellants chose not to do. Instead they waited until *after* their case against the tortfeasor had gone to judgment to demand arbitration. Thus, if any prejudice occurred, it was brought about by appellants' own actions.

Thus, it should be the judgment of this court that an insurer does have the right to place reasonable limiting language in a policy of insurance

which would operate to require that its consent be obtained before settlement is reached by its insured with a tortfeasor or before suit is filed by the insured against an uninsured or underinsured tortfeasor.

Accordingly, I concur only in the judgment.

WRIGHT, J., concurs in the foregoing opinion.