**JACKSON, Appellee,**

v.

**REPUBLIC–FRANKLIN INSURANCE CO., Appellant.**

[Cite as *Jackson v. Republic–Franklin Ins. Co.* (1990), 66 Ohio App.3d 359.]

Court of Appeals of Ohio,
Lawrence County.

No. 1887.

Decided March 13, 1990.

*Noethlich & Vivyan* and *David J. Graeff,* for appellant.
*Spears & Spears* and *David R. Spears,* for appellee.

STEPHENSON, Judge.

This is an appeal from a judgment entered by the Lawrence County Court of Common Pleas granting summary judgment to Nancy L. Jackson, plaintiff below and appellee herein, against Republic–Franklin Insurance Company, defendant below and appellant herein, and overruling a summary judgment motion filed by appellant in a declaratory judgment action instituted by appellee. The following error is assigned:

"The trial court erred in denying Republic–Franklin's motion for summary judgment; in granting Nancy Jackson's motion for summary judgment, the trial court based it upon an erroneous interpretation of the rule of law to be followed in this case:

"If an insured, in good faith, prosecutes a lawsuit against an underinsured motorist with the knowledge of the insured's insurance company, generally *both* the insured and his insurance company are bound by any final judgment rendered as a result of such lawsuit that determines the liability of the underinsured motorist to the insured. *Motorists Mut. Ins. Co. v. Handlovic* (1986), 23 Ohio St.3d 179 [23 OBR 343, 492 N.E.2d 417]."

The facts pertinent to this appeal are as follows. On October 10, 1985, appellee was injured in an automobile accident which occurred as a result of the negligence of a certain Jeannie M. Hart. On October 26, 1986, appellee commenced an action against the said Jeannie M. Hart for damages incurred as a result of the accident. Subsequently appellee gave notice to appellant that she was asserting a claim for underinsured motorist coverage on a policy of insurance issued by appellant.[1]

The aforesaid policy of insurance provided, *inter alia,* as follows:

"PART C—UNINSURED/UNDERINSURED MOTORIST COVERAGE

---

[1]. The subject policy contained underinsured motorist coverage up to a limit of $100,000 per person for a period of coverage from August 27, 1985 to February 27, 1986, to the named insured, Lucy K. Abrams. It is unclear what relationship there is between the named insured and appellee herein, but, in any event, coverage of appellee is not disputed.

"  *  *  *

"Any judgment for damages arising out of a suit brought without our written consent is not binding on us. If we and you do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue shall be on us."

On November 11, 1987, appellee gave notice to appellant that a trial in her action against the said Jeannie M. Hart would commence on December 7, 1987. At that time, appellee requested a determination of whether appellant would "consent" to be bound by the jury verdict rendered in that case. While appellant made a response to such request, the parties are in disagreement over the legal effect of such response. Appellant's response, in pertinent part, was as follows:

"In the event the verdict is in excess of the tortfeasor's limits, then we'll either agree with the verdict as presented or submit to arbitration under the terms of the policy contract."

Appellee argues that such language "conclusively operates as an additional agreement of [appellant] * * * that it would not be bound by the verdict." Appellant argues to the contrary and states that after the verdict was rendered, it agreed to be bound by such amount.

Following trial, the jury returned a verdict of $53,812 in favor of appellee. Although the limit on the liability policy covering Jeannie M. Hart was $50,000, it appears from the summary judgment materials before us that the tortfeasor's insurance carrier did, in fact, pay the full amount of the verdict, $53,812. On December 27, 1987, appellee made a formal demand for arbitration to appellant. Such demand was denied.

On March 14, 1988, appellee commenced the present action below seeking both a declaratory judgment, and order, that appellant comply with the arbitration provisions set forth in the aforementioned policy and that appellant pay to appellee whatever arbitration award is made by the arbitration panel in excess of $53,812 up to the policy limit of $100,000. Appellant filed its answer denying any duty to arbitrate and filed a counterclaim for declaratory judgment that appellee was bound by the previous jury award. Contemporaneously, appellant filed its motion for summary judgment on its counterclaim. Appellee, apparently without making a reply to appellant's counterclaim pursuant to Civ.R. 7(A), filed her own motion for summary judgment. Neither motion was supported by affidavit, or otherwise.

A decision was rendered on these cross-motions and a judgment entry filed on August 25, 1989, granting judgment to appellee as a matter of law and

ordering appellant to comply with the arbitration provisions and to pay appellee any arbitration award made in excess of $53,812 up to $100,000.

The issue presented for review herein is whether the parties are bound by the final judgment rendered for appellee against the uninsured motorist, Jeannie M. Hart. For the following reasons, we hold that both parties are so bound.

In *Motorist Mut. Ins. Co. v. Handlovic* (1986), 23 Ohio St.3d 179, 23 OBR 343, 492 N.E.2d 417, the Ohio Supreme Court held, in the syllabus, as follows:

"If an insured, in good faith, prosecutes a lawsuit against an underinsured motorist *with the knowledge of the insured's insurance company,* generally *both the insured and his insurance company are bound by any final judgment rendered* as a result of such lawsuit that determines the liability of the underinsured motorist to the insured." (Emphasis added.) (Citations omitted.)

The issue in *Handlovic* was whether an insurance carrier could refuse to arbitrate an underinsured motorist claim, asserted by its insured, subsequent to a final judgment of liability and damages being entered against the tortfeasor in a separate action. The court found that the insurance carrier could refuse to arbitrate the claim. This ruling was predicated on the rule of law set forth in the syllabus of *Universal Underwriters Ins. Co. v. Shuff* (1981), 67 Ohio St.2d 172, 21 O.O.3d 108, 423 N.E.2d 417, which reads as follows:

"An insured who seeks to recover damages from his insurer under an uninsured motorist policy and is unsuccessful after a trial on the merits and a jury verdict, may not thereafter submit to arbitration the issue of the liability of the uninsured motorist." (Citation omitted.)

In *Shuff,* the court ruled that an insured could not seek recovery under the underinsured motorist provision of a policy from his insurance carrier by virtue of the doctrine of *res judicata.*[2]

---

**2.** The court noted that while the doctrine of *res judicata* would not be directly applicable therein, the doctrine would dictate the same results:

"Customarily, arbitrators decide issues without judicial review. A court may, however, vacate an arbitration result when the arbitrators rule contrary to law, or make 'such manifest mistake as naturally works a fraud.' That is, even if appellees compelled appellant to arbitrate this matter and received a damage award, that result would clearly be erroneous and contrary to law under the doctrine of *res judicata.* Universal would then be entitled to undertake another proceeding to reinstate the jury verdict. After all this, the parties would be exactly where the jury left them. Arbitration, in this case, would be a 'vain thing,' and the well-settled policy of caution is expressed by the maxim, 'equity will not decree a vain thing.' Therefore, under the terms of this insurance policy, Universal may refuse to arbitrate." (Citations omitted.) *Shubb,* 67 Ohio St.2d 172 at 174, 21 O.O.3d 108 at 109, 423

The cause *sub judice* is legally indistinguishable from *Handlovic.* As in that case, the appellee herein has already had a final judgment entered in her favor against the negligent party. Both appellant herein and the insurance carrier in *Handlovic* had knowledge of the impending trial. Therefore, we conclude that the doctrine of *res judicata* similarly applies herein and that appellant may refuse to arbitrate.

Appellee argues that *Handlovic* is distinguishable from the cause *sub judice* and that the proper standard to apply was that set forth in *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447. We disagree.

Appellee asserts that *Handlovic* must be read as "merely reaffirming" the *Shuff* decision which stands for the proposition that a jury verdict would be binding on both parties herein only if recovery was for less than the policy limit of the tortfeasor. Appellee would buttress this contention by further arguing that the portion of *Handlovic* previously cited in this opinion, and contained in the Supreme Court syllabus of that opinion, is mere *dicta* and should not be followed.

■ It is well established that the syllabus of a Supreme Court opinion states the controlling points of law arising from the case. Rule 1(B) of the Supreme Court Rules for the Reporting of Opinions; *Palmer v. Zeigler* (1907), 76 Ohio St. 210, 227, 81 N.E. 234, 238 (citing Rule VI of the Rules of Court adopted in 1858, 5 Ohio St. v). An exception to this rule occurs where "the controlling facts are totally different from those in the case wherein the syllabus was announced." *Troy v. Schnell* (1933), 48 Ohio App. 325, 331, 1 O.O. 508, 511, 193 N.E. 782, 785. Accordingly, the syllabus from *Handlovic* is the controlling point of law from the case unless the "controlling facts" of the cause *sub judice* are totally different from those of *Handlovic.* As stated above, the controlling facts in both cases are the same.

■ Appellee urges that *Handlovic* is distinguishable for the reason that, unlike *Handlovic,* the judgment herein against the tortfeasor exceeded the tortfeasor's policy limit by $3,812 and such fact entitles appellee to arbitration under the underinsured provisions of her policy up to the $100,000 limit therein. In short, appellee contends she is not bound by the jury determination of her damages.

Appellee's argument ignores the rationale upon which *Handlovic* is based. As stated in *Handlovic,* 23 Ohio St.3d at 183, 23 OBR at 346, 492 N.E.2d at

N.E.2d 417 at 418; See, also, *Handlovic, supra,* 23 Ohio St.3d at 183, 23 OBR at 346, 492 N.E.2d at 420, which applies the facts therein to the same analysis and reaches the same result.

420, because the judgment against the tortfeasor therein "conclusively determined the full extent of appellant's legal entitlement to damages, no purpose is served by requiring Motorists to comply with the appellants' demand for arbitration in this case." (Emphasis deleted.) The same conclusion follows herein irrespective that the judgment exceeded the tortfeasor's policy limits.

Because both appellant and appellee were bound by the judgment of the jury and under the underinsured policy provision that "[w]e will pay damages which a covered person is legally entitled to recover for bodily injury," but for the fact that the tortfeasor's insurance paid the full amount of the judgment of $53,812, appellee would have been entitled to be paid $3,812 under her policy even though she was not entitled to arbitration. Moreover, appellee cites *Bogan, supra,* for the proposition that an underinsured motorist claim is "ripe for arbitration" if there has been an "exhaustion" of the policy limits of the tortfeasor's liability insurance. However, the insurance policy in *Bogan* directly provided that the underinsured coverage would not make payment for any injury until *after the limits of liability* under all * * * insurance policies * * * have been *exhausted by payments of judgments or settlements. Bogan, supra,* 36 Ohio St.3d at 23, 521 N.E.2d at 449.[3] Thus, *Bogan* turned, in part, on construction of the language contained in the insurance policy at issue therein and did not create a general doctrine of "exhaustion" of a tortfeasor's liability policy limits as a test for determining whether there exists a valid claim for underinsured motorist coverage. Accordingly, we find appellee's arguments to be without merit. Finally, *Bogan* is distinguishable for the reason that the primary issues adjudicated therein related to the right of the insured to settle with the tortfeasor as opposed to proceeding to judgment at trial against the tortfeasor.

As aforesaid, the syllabus in *Handlovic* is the controlling principle to be applied herein. Because it is undisputed among the pleadings filed below that appellant had knowledge of the lawsuit prior to trial and after the trial a final judgment was entered therein on the issue of liability and damages, the parties herein are bound by such judgment. Appellant's assignment of error is sustained, the judgment of the trial court is reversed, and final judgment is entered in favor of appellant.

*Judgment reversed.*

---

**3.** The pertinent policy provision, as cited in *Bogan,* read as follows:

"3. The company shall not be obligated to make any payment because of bodily injury to which this insurance applies and which arises out of the ownership, maintenance or use of an underinsured motor vehicle until *after the limits of liability* under all bodily injury liability bonds or insurance policies available at the time of the accident have been *exhausted by payment of judgments or settlements.*" (Emphasis *sic.*) *Id.,* 36 Ohio St.3d at 23, 521 N.E.2d at 449.

HARSHA, J., concurs.

GREY, J., dissents.

HARSHA, Judge, concurring.

I concur in the judgment and opinion sustaining appellant's assignment of error, reversing the judgment of the court below, and entering final judgment in favor of appellant, but write separately to address an issue raised by appellee both below and on appeal but not discussed in the principal opinion.

The insurance policy of appellant provided that "ANY JUDGMENT FOR DAMAGES ARISING OUT OF A SUIT BROUGHT WITHOUT WRITTEN CONSENT IS NOT BINDING ON US." Moreover, an agent of appellant represented to appellee in a letter dated December 7, 1987 that it would "not take the position of being bound by the verdict rendered in the pending litigation and trial which is scheduled for December 7, 1987."

In appellee's memorandum in support of her motion for summary judgment, she argued that "[h]aving elected not to be bound by the Lawrence County jury's verdict, Republic–Franklin Insurance Company should be estopped from denying the right of Plaintiff to arbitrate her claim, pursuant to the underinsured motorist protection afforded in the policy issued to Lucy Abrams and covering the Plaintiff, Nancy L. Jackson." She presented this estoppel argument at the hearing on the parties' summary judgment motions and also offers this argument on appeal. The trial court's August 25, 1988 judgment entry of the trial court does not expressly indicate the basis for its decision; accordingly, if appellee's estoppel argument were meritorious, we would be required to affirm the trial court judgment. See, *e.g., Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350, 1357, for the proposition that every reasonable presumption must be made in favor of the trial court judgment. Therefore, an examination of this argument is necessary to the disposition of the case.

If an insured, in good faith, prosecutes a lawsuit against an underinsured motorist with knowledge of the insured's insurance company, generally *both* the insured and his insurance company are bound by any final judgment rendered as a result of such lawsuit that determines the liability of the underinsured motorist to the insured. *Motorists Mut. Ins. Co. v. Handlovic* (1986), 23 Ohio St.3d 179, 23 OBR 343, 492 N.E.2d 417, syllabus. The key word in the *Handlovic* holding is "generally." The *Handlovic* decision did not expressly exclude estoppel as a viable exception to the general rule.

Assuming *arguendo* that estoppel provides an exception to the *Handlovic* holding, I am persuaded that the elements of estoppel are not applicable to the

uncontroverted facts herein. In order for equitable estoppel to apply, four *prima facie* elements which the plaintiff must set forth are: (1) that the party knowingly made a false representation or concealment of a material fact (or at least took a position contrary to that now taken); (2) that the representation must be made in a misleading manner with the intention or expectation that another would rely on it to act; (3) that the plaintiff actually relied on the representation; and (4) that plaintiff relied to his detriment so much that unless the party is estopped from asserting the truth or a contrary position, plaintiff would suffer loss. *Andres v. Perrysburg* (1988), 47 Ohio App.3d 51, 56, 546 N.E.2d 1377, 1383. Additionally, there can be no equitable estoppel where the party claiming it is chargeable with knowledge of the facts, as where he either knows the facts or is in a position to know them or the circumstances are such that he should know them. *Pedler v. Aetna Life Ins. Co.* (1986), 23 Ohio St.3d 7, 11, 23 OBR 6, 9, 490 N.E.2d 605, 608. Alternatively, under the doctrine of promissory estoppel, a promise reasonably expected to induce and which does induce action is binding if injustice can be avoided only by enforcement. *Blackwell v. Internatl. Union U.A.W.* (1983), 9 Ohio App.3d 179, 9 OBR 289, 458 N.E.2d 1272; Restatement of the Law 2d, Contracts (1981) 242, Section 90(1).

In the case at bar, construing the evidence most strongly in favor of appellee, appellant made a promise through its contractual language as well as its agent's letter that it would not be bound by the jury verdict in appellee's action against the tortfeasor. However, there is no evidence of detrimental reliance on the part of appellee, *i.e.*, no indication that but for appellant's promise, she would not have proceeded in her case against the tortfeasor. Moreover, appellee's counsel should have been aware that the refusal of appellee to consent to be bound was not a controlling factor pursuant to *Handlovic.* Accordingly, although the representations by appellant were arguably deceptive and reprehensible, the holding of *Handlovic* controls.

In essence, we are asked to make bad law in an attempt to punish the appellant insurance company for its lack of good faith in dealing with its insureds. Given the facts that Republic–Franklin Insurance Company both included provisions within its policy that are in contravention of the law under *Handlovic, supra,* and further took the formal written position that it would not be bound by the jury's verdict, it is indeed tempting to allow appellee a "second bite of the apple" through arbitration. However, since our duty is to interpret the law within the framework of *stare decisis* rather than simply to

hand down sanctions against wayward insurance companies,[4] I somewhat reluctantly concur in the judgment and opinion.

---

**4.** In so holding, one assumes that there are independent remedies, including administrative action and/or bad faith litigation, available to appellee and similarly situated insureds.