OPINION
{¶ 1} Appellant State Farm Mutual Automobile Insurance Company ("State Farm") appeals the decision of the Stark County Court of Common Pleas that entered judgment, in favor of Appellees Annette Leisure, et al., in the amount of $283,631.20. The following facts give rise to this appeal.
 {¶ 2} This lawsuit is the result of an accident that occurred on August 17, 1995. On this date, appellees' decedent, Jason Leisure, was ejected from an automobile owned by George Fender and operated by Jonathan Sanchez. The joint negligence of Sanchez and the driver of another vehicle, George Motz, III, caused the accident. Jason Leisure died as a result of the injuries he sustained in the accident.
 {¶ 3} Farmers Insurance of Columbus, Inc. ("Farmers") insured Sanchez with liability coverage and UM/UIM coverage limits in the amount of $100,000 each person and $300,000 each accident. Motz had liability coverage under a policy issued by Grange Mutual Casualty Company ("Grange") with liability limits of $50,000. Appellees settled with Grange for the $50,000 per person limits of the policy. Appellees also settled with Farmers for $98,000 of the available $100,000 per person policy limits.
 {¶ 4} Thereafter, on August 6, 1997, Appellees Annette Leisure, individually and as administratrix of the Estate of Jason Leisure, deceased, Dennis Leisure and Jacob Leisure filed suit against State Farm and Farmers. As an occupant of the Sanchez vehicle, the decedent qualified as an insured under the Farmers' policy and therefore, appellees were able to access UIM coverage under said policy. Prior to trial, appellees settled with Farmers for a total of $350,000, which represents the $300,000 per accident limits of the UIM coverage and $50,000 in prejudgment interest. Appellees dismissed their claim against Farmers and this matter proceeded against State Farm.
 {¶ 5} The State Farm policy contains UM/UIM coverage in the amount of $100,000 each person and $300,000 each accident. Thereafter, appellees and State Farm filed cross-motions for summary judgment on the issue of whether the Ohio Supreme Court's decision in Savoie v. Grange Mut. Ins.Co. (1993), 67 Ohio St.3d 500 or S.B. 20 applied. On appeal to this court, we determined "* * * the October 14, 1994 policy in effect of (sic) the time of the accident was a new contract of insurance; therefore, the provisions of S.B. 20 do not apply * * *." Id. at 2.
 {¶ 6} Upon remand, this matter proceeded to trial on July 18, 2002. Following deliberations, the jury returned a verdict, in favor of appellees, in the amount of $500,000. After considering the issue of setoff, the trial court entered judgment against State Farm in the amount of $283,631.20.
 {¶ 7} State Farm timely filed a notice of appeal and sets forth the following sole assignment of error for our consideration:
 {¶ 8} "I. The trial court erred in entering final judgment against State Farm in the amount of $283,631.20."
 I {¶ 9} In its sole assignment of error, State Farm contends the trial court erred when it entered judgment, in favor of appellees, in the amount of $283,631.20. We disagree.
 I. State Farm's Arguments {¶ 10} State Farm maintains it does not owe appellees any money because the jury award has been fully satisfied and therefore, appellees are not entitled to UIM coverage under its policy. In support of this argument, State Farm first cites the case of Motorists Mut. Ins. Cos. v.Handlovic (1986), 23 Ohio St.3d 179. In the Handlovic case, the Ohio Supreme Court addressed the issue of whether the insured, after receiving a judgment against the tortfeasor and his insurance company that determined the extent of the plaintiff's legal entitlement to damages, could thereafter request arbitration with the tortfeasor's insurance company. Id. at 181. In denying the plaintiff's request for arbitration, the Supreme Court determined that a UM/UIM claimant may not seek UM/UIM coverage in excess of damages determined after a jury trial because the jury verdict "* * * conclusively determined the full extent of the [claimant's] legal entitlement to damages * * *." (Emphasis sic.) Id. at 183. Based upon the Handlovic case, State Farm concludes appellees may not seek damages in excess of the jury's verdict.
 {¶ 11} State Farm next maintains, pursuant to the Ohio Supreme Court's decision in Savoie, that appellees are not entitled to UIM coverage under its motor vehicle liability policy because appellees have been fully compensated for their damages. In Savoie, the Supreme Court held as follows:
 {¶ 12} "1. Each person who is presumed to have been damaged as a result of a wrongful death claim may, to the extent of his or her damages, collect from the tortfeasor's liability policy up to its per person limits subject to any per accident limit. * * *
"* * *
 {¶ 13} "3. An underinsured claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. * * *
 {¶ 14} "4. Each person, who is covered by an uninsured/underinsured policy and who is presumed to be damaged pursuant to R.C. 2125.01 has a separate claim subject to a separate per person policy limit. * * *."
 {¶ 15} Pursuant to Savoie, State Farm recognizes that each of the three wrongful death beneficiaries has a separate claim up to the per person limits of the liability coverage. State Farm argues the liability policies applicable to the decedent's accident provided potential coverage in the amount of $348,000. This dollar amount is based upon $300,000 of available liability coverage under the Farmers policy and $50,000 of available liability coverage under the Grange policy.[1] This dollar amount includes $200,000, which was available to appellees under the per person limits of Farmers' liability coverage. However, appellees elected to settle their claims, with Farmers, for a total of $100,000 and did not access the remaining $200,000.
 {¶ 16} State Farm contends, pursuant to Fulmer v. Insura Prop. Cas. Co., 94 Ohio St.3d 85, 2002-Ohio-64, appellees were entitled to enter such a settlement even though it did not exhaust the tortfeasor's limits of its liability coverage and even though its policy expressly provided for exhaustion of such limits before providing UM/UIM coverage. However, State Farm maintains appellees' decision to settle for less than the policy limits of its liability policy does not affect the setoff analysis. In support of this argument, State Farm cites the following language from the Fulmer decision: "* * * [E]ven if the insured does settle for $.01, the underinsurer is not prejudiced because it still has to pay only the amount it contracted to pay, i.e., the insured's damages in excess of the tortfeasor's available limits up to the insured's policy limit." Id. at 96.
 {¶ 17} State Farm concludes the $500,000 jury verdict is subject to a $348,000 liability coverage setoff, even though appellees elected to settle for less than that amount. Therefore, State Farm claims, after setoff of this available amount, there remains $152,000 of damages in excess of the applicable liability coverage. However, this amount is further set off by the settlement amount of $300,000, which Farmers paid under its per accident limits of its UIM coverage. Farmers also paid an additional $50,000 in interest, which we will not consider in determining the issue of setoff. State Farm contends appellees have been compensated above and beyond the jury award because they have received a total of $648,000, which includes $348,000 in liability coverage from Farmers and Grange and $300,000 in UIM coverage from Farmers. As a result, State Farm maintains appellees are not entitled to UIM coverage under its policy of insurance.
 {¶ 18} State Farm also argues that its UIM coverage is excess to coverage provided by Farmers based upon the language contained in the two policies. State Farm's policy is an excess policy because it contains the following language:
 {¶ 19} "c. If the insured sustains bodily injury while occupying a vehicle not owned by you and such vehicle is described on the declarations page of another policy providing uninsured motor vehicle coverage, or its driver is an insured on another policy, this coverage applies:
 {¶ 20} "(1) as excess to any uninsured motor vehicle coverage which applies to the vehicle or its driver as primary coverage; * * *" (Emphasis sic.) 6090 Amendment of liability, uninsured motor vehicle and physical damage coverages and conditions, Section III(e)(3)(c).
 {¶ 21} Farmers policy provides pro rata coverage pursuant to the following language:
"Other Insurance
 {¶ 22} "If there is other applicable automobile medical insurance on any other policy that applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits." Farmers Policy at 3.
 {¶ 23} In Motorists Mut. Ins. Co. v. Lumbermens Mut. Ins. Co.
(1965), 1 Ohio St.2d 105, the Court held:
 {¶ 24} "Where one insurer insures against a loss and provides that it shall not be liable for a greater proportion of the loss than the applicable limit of liability stated in its declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss, and another insurer insures against the same loss and additionally provides that such insurance shall be excess insurance over any other valid and collectible insurance available to its insured, effect should be given to the latter provision, and the first insurer should be held to be the primary insurer." Id. at syllabus.
 {¶ 25} State Farm concludes that since its UIM coverage would be excess to the UIM coverage provided by Farmers' UIM coverage and liability coverage, its limits are never reached by appellees because they have been fully compensated.
 {¶ 26} In its reply brief, State Farm argues that, in the alternative, if we should determine that only the $148,000 in liability coverage actually recovered should be applied in satisfaction of the $500,000 verdict, its excess UIM coverage would be available to satisfy the remaining $52,000 of the jury's verdict.
II. Appellees Leisures' Arguments
 {¶ 27} In response to State Farm's arguments, appellees challenge State Farm's interpretation of the Savoie decision. Specifically, appellees maintain that any setoff from UIM coverage must be based on the total damages sustained by an insured, not a comparison of the limits of coverage. In reaching this conclusion, appellees rely upon the following language in Savoie:
 {¶ 28} "Thus, underinsured motorists who suffer from injuries caused by an automobile accident are entitled to collect up to the full limits of their underinsurance policy to the extent that their damages exceed the amounts which the tortfeasor's insurer has already paid to them." Savoie at 508.
 {¶ 29} Further, appellees contend any setoff must be based on the amount paid by the tortfeasor's insurer. Id. Pursuant to this interpretation of Savoie, appellees argue the trial court's judgment, against State Farm, in the amount of $283,631.20, is correct. For purposes of setoff, appellees argue only the amount paid, $148,000, is subject to setoff. Appellees contend the additional $200,000 State Farm includes in determining setoff should not be considered because it was not actually paid to them by Farmers.
 {¶ 30} Appellees also rely upon the language contained in State Farm's policy at Section III-UNINSURED MOTOR VEHICLE-COVERAGE U, Limits of Liability, ¶ 4. This language provides:
 {¶ 31} "4. The maximum total amount payable to all insureds under this coverage is the difference between the `each accident' limits of liability of this coverage and the amount paid to all insureds by or for any person or organization who is or may be held legally liable for thebodily injury." (Emphasis sic.)
 {¶ 32} Appellees argue this language is quite limited and only applies to the amount actually received by the injured party, not the amount "payable" or "available for payment." Thus, State Farm may not expand setoff to include additional liability coverage that was available for payment but never actually paid to appellees. Appellees further maintain that once they released the tortfeasors by settling their claims against them in 1997, neither Farmers nor Grange were organizations "who is or may be" held legally liable for the bodily injury.
 {¶ 33} Appellees further contend State Farm may not include the $300,000 paid by Farmers, under the UM/UIM provisions of its policy, in determining setoff. Appellees rely on the Savoie decision which they argue permits "interfamily" stacking. Appellees rely on the following language of the Savoie decision:
 {¶ 34} "If the premium has been reduced, it logically follows that benefits can be restricted. However, the injured individual in an interfamily stacking scenario seeks to combine the limits of two policies for which premiums have not been reduced because of their mutual existence. Because insurers are attempting to prevent the full payment of two policy limits resulting from the full, unadjusted premium payment of two unrelated insurance policies, the contractual preclusion of interfamily stacking is unconscionable." Id. at 507.
 {¶ 35} Thus, appellees conclude that because Savoie permits "interfamily" stacking, it matters not that they may ultimately recover more than the jury's verdict of $500,000. Finally, appellees maintain State Farm waived any argument concerning exhaustion of the tortfeasor's limit of liability by not raising it until post-verdict. Appellees also maintain State Farm also cannot raise any new coverage defenses that were not included as affirmative defenses.
III. Analysis
 {¶ 36} Having reviewed the parties' arguments on appeal and the applicable case law, we conclude the trial court properly calculated setoff in this matter. In reaching this conclusion, we first consider the $148,000 received by appellees from Grange's and Farmers' liability policies. State Farm argues a total of $348,000 should be set off against the jury's verdict of $500,000 because that is the total amount of money appellees could have recovered under the two liability policies. This amount includes $200,000 which was available, under Farmers' liability policy, but which appellees did not receive in the settlement of their claims.
 {¶ 37} We find this additional $200,000 that appellees did not receive in their settlement, with Farmers, is not to be considered when determining setoff. In Savoie, the Ohio Supreme Court explained that an individual covered by a UM/UIM policy must be paid when his or her damages exceed those monies available to be paid by the tortfeasor's liability carriers. Savoie at paragraph three of the syllabus. In Colev. Holland, 76 Ohio St.3d 220, 1996-Ohio-105, the Ohio Supreme Court further explained:
 {¶ 38} "Pursuant to former R.C. 3937.18, an underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. In determining the amount of underinsurance coverage to be paid on a claim involving an accident governed by former R.C. 3937.18, the underinsurance provider is entitledto set off the amounts actually recovered from the tortfeasor's liabilitycarriers against the insured's total damages, rather than against its policy limits." (Emphasis added.) Id. at syllabus.
 {¶ 39} Clearly, pursuant to the Savoie and Cole decisions, in determining setoff, State Farm is only entitled to set off the amount appellees actually received from the tortfeasors, which is $148,000. Therefore, we will not consider the additional $200,000 that was available for payment under Farmers' liability policy.
 {¶ 40} The next issue we must consider is whether the $300,000 Farmers paid to appellees as settlement for their UIM claim should be included for purposes of calculating setoff. Pursuant to the Savoie decision, we find this amount should not be considered because interfamily stacking of UM/UIM benefits is permissible. "Interfamily" stacking is defined as, "* * * the aggregation of uninsured/underinsured limits of policies purchased by two or more people who are not members of the same household." Savoie at paragraph two of the syllabus. Specifically, the Court explained:
 {¶ 41} " `Interfamily' stacking occurs when an individual has paid a premium for an uninsured/underinsured motorist policy and is riding in an automobile, which is owned by someone other than a family member living in the same household and is insured by a separate uninsured/underinsured motorist policy. When the individual is injured by an uninsured or underinsured motorist while riding in this automobile, he will seek to recover compensation from the policy insuring the automobile in which he was riding and his own uninsured/underinsured motorist policy for which he has paid a premium." Id. at 506-507.[2]
 {¶ 42} The Court concluded that insurers may not contractually preclude interfamily stacking. Id. at 507. The Court reasoned that because interfamily stacking involves the stacking of two or more policies for which premiums have not been reduced, the full payment from the policies is available and may not be contractually limited. Id. The case sub judice presents an interfamily stacking scenario because appellees are seeking UIM coverage from two separate policies. Appellees are seeking UIM coverage under their own policy issued to them by State Farm. Appellees also sought and received UIM coverage from Farmers, the insurer of the driver of the vehicle in which the decedent was riding at the time of the accident.
 {¶ 43} According to Savoie, since interfamily stacking is permissible, Appellees Annette, Dennis and Jacob Leisure may stack the limits of State Farm and Farmers' UIM policies. Therefore, we will not include the $300,000, in UIM benefits appellees previously received from Farmers, in determining setoff as it pertains to State Farm. The trial court correctly determined that State Farm owes appellees $283,631.20 in UIM damages.
 {¶ 44} State Farm's sole assignment of error is overruled.
 {¶ 45} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: Wise, J., Gwin, P.J., and Boggins, J., concur.
[1] A total of $2,000 of the $350,000 was unavailable because it was paid to another injured party.
[2] " `Intrafamily' stacking occurs when an individual or an entire family is insured by several separate uninsured/underinsured policies insuring different vehicles. When the individual or a family member is injured by an uninsured or underinsured motorist, he or she will try to combine, or stack, each of the policies' underinsurance limits to compensate the injured individual." Savoie at 506.