**EMPLOYERS MUTUAL COMPANIES,
Respondent,**

v.

**Florence Sofie NORDSTROM,
Petitioner, Appellant.**

**No. C1-91-2240.**

Supreme Court of Minnesota.

Feb. 19, 1993.

Errol K. Kantor, and The Taylor Law Firm, Charles A. Beckjord, Minneapolis, for appellant.

Thomas D. Jensen, Timothy J. O'Connor, Lind, Jensen & Sullivan, P.A., Minneapolis, for respondent.

Mary C. Cade, Schwebel, Goetz, Sieben & Moskal, P.A., Minneapolis, for amicus curiae MN Trial Lawyers Assoc.

SIMONETT, Justice.

We decide in this appeal that the injured claimant must recover on her auto accident tort claim by trial or settlement before bringing an arbitration claim for underinsured motorist benefits.

In October 1990, claimant Florence Nordstrom was struck by a car while crossing the street and sustained a hip fracture. The parties disagree whether claimant was in the crosswalk at the time, so both liability and damages are disputed. The car driver tortfeasor carries $50,000 tort liability insurance. In addition, Florence Nordstrom has $60,000 underinsured motorist coverage under her own policy with Employers Mutual Companies.

Claimant Nordstrom commenced suit in district court against the tortfeasor. Sometime thereafter, with the tort action pending, she filed a request with Employ-

ers Mutual for arbitration of an underinsured benefits claim. Employers Mutual, as a plaintiff, then commenced these proceedings to stay arbitration. The trial court stayed arbitration until "such time as Florence Nordstrom's tort action against the tortfeasor is settled or until such time as a District Court determines that the tortfeasor was underinsured." The court of appeals in *Employers Mut. Cos. v. Nordstrom,* 487 N.W.2d 543 (Minn.App. 1992), affirmed, ruling that claimant had "waived the right for immediate arbitration" by suing in court before seeking arbitration. We granted the defendant claimant's petition for further review to clarify the timing of an underinsured motorist claim in personal injury auto litigation.

■ An underinsured motorist claim is both alike and unlike a tort cause of action. The underinsured claim is a contract action for first party benefits against one's own insurer, unlike a tort action for damages against a third party tortfeasor. On the other hand, the contract action raises the same issues of damages and tort liability as in a tort action. These two remedies, however, are sufficiently different, so that the doctrine of election of remedies is inapposite. In other words, pursuing one remedy over another does not result in a waiver of the remedy not chosen.[1] Collateral estoppel may in certain situations bar pursuing a further remedy, as we have held, but this is a different matter.

Underinsured coverage has generally been understood as excess coverage, to be utilized only after the cause of action against the insured tortfeasor has been concluded. Thus in *Johnson v. American Family Mut. Ins. Co.,* 426 N.W.2d 419, 422 (Minn.1988), we said:

Underinsured motorist coverage is not an alternative to liability coverage. This is not some optional protection which an injured party can choose in lieu of asserting a claim against an insured tortfeasor. It is merely 'excess coverage over the liability limit that would be available when damages were uncompensated merely because the tortfeasor carried inadequate liability insurance.'

Initially, carriers included an exhaustion clause in their underinsured coverage, such as, "We will pay under this coverage only after the limits of liability under any applicable bodily injury bonds or policies have been exhausted by payment of judgments or settlements." In other words, the injured claimant had to settle for the policy limits or sue and recover the policy limits in a trial. In *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983), we held this clause invalid as contrary to the No–Fault Act, Minn.Stat. § 65B.41–.71 (1990).

*Schmidt* was important because it allowed an underinsured claim to be maintained when the tort action is settled for less than the tort liability insurance limits.[2] The *Schmidt* decision also approved a notice procedure whereby the underinsurer could meet and pay the tortfeasor's proposed settlement offer; the underinsured benefits claim would then proceed, after which the underinsurer might, as subrogee, maintain claimant's tort action against the tortfeasor to recoup all or a portion of the sums the underinsurer had paid the injured claimant.

If the claimant settled the tort claim for less than the tort limits, there would be, however, a gap between the amount recovered and the amount of liability coverage available for a recovery. In *Schmidt,* this court divided on how to handle this gap. The majority opinion held that the amount of the gap would be deducted from any underinsured benefits awarded the plaintiff. It was felt that this would be a

---

1. The appendix to appellant's brief includes the briefs filed with the court of appeals. Ordinarily this is a needless redundancy and not contemplated by Minn.R.Civ.App.P. 130.01. This court, of course, has access to the briefs submitted to the court of appeals which are filed with the clerk of appellate courts. Apparently appellant in this case appended the briefs to show

that the waiver theory had not been raised below by the parties.

2. *Broton v. Western Nat. Mut. Ins. Co.,* 428 N.W.2d 85, 89 (Minn.1988), suggests some of the circumstances under which a claimant with a tort claim worth more than the tort insurance limits might settle with the tortfeasor's insurer for less than the policy limits.

strong incentive for the plaintiff to get the "best settlement" from the tortfeasor so as to minimize the gap. *Id.* at 261. The dissenters in *Schmidt* argued there was no need for the claimant to absorb the gap; that the procedure allowing the underinsurer to subrogate and recoup against the tortfeasor was adequate protection for all concerned. Subsequently, in *Broton v. Western Nat. Mut. Ins. Co.*, 428 N.W.2d 85, 89–90 (Minn.1988), we said that the legislature, by amendments to the No–Fault Act, had adopted the position of the *Schmidt* dissent.

So, as matters apparently stand, the injured claimant can either (1) pursue a tort claim to a conclusion in a district court action, and then, if the judgment exceeds the liability limits, pursue underinsured benefits; or (2) settle the tort claim for "the best settlement," give a *Schmidt–Clothier* notice to the underinsurer, and then maintain a claim for underinsured benefits.[3]

But what if the injured claimant does not want to try or settle her tort claim first? May she, instead, proceed first with a claim for underinsured benefits against her own carrier? That is the issue in this appeal.

Claimant Nordstrom argues that the question of whether there is underinsured coverage for her claim is an arbitrable issue, and, therefore, it is appropriate and efficient to proceed first to arbitration for underinsured benefits. She says it is a function of arbitrators to determine the amount of damages to which a claimant is entitled, and, if the arbitrator's determination is in excess of the tort insurance limits, the award of underinsured benefits will have been established. But this is not quite true. The arbitration award is incomplete and ineffectual until there is a recovery on the tort claim. If the tort claim is subsequently settled for less than the tort limits, what happens to the gap? (Nordstrom, in oral argument, thought claimant might have to eat the gap.) If the tort action is subsequently tried and results in a verdict within the tort limits or for no liability, presumably the arbitration proceeding is mooted; this raises the further question whether the underinsurer should be able to intervene in the tort action to protect its subrogation interest even though it has yet paid nothing. On the other hand, if the arbitration award is less than the tortfeasor's policy limits, arguably claimant would be later estopped from asserting an underinsured claim even if the subsequent tort action results in a verdict in excess of tort limits. Assuming authority to do so, the arbitrators might award underinsured benefits with a condition subsequent attached, *i.e.*, with the amount of benefits to be later calculated after a recovery is made from the tortfeasor's insurer; but this scenario in some instances might reduce unduly the claimant's incentive to make the "best settlement" with the tortfeasor's insurer.

The short answer, however, to claimant's argument is that a factual condition precedent to an underinsured motorist claim is ordinarily not arbitrable, *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 291 (Minn.1983), and *United States Fidelity & Guaranty Co. v. Fruchtman*, 263 N.W.2d 66 (Minn.1978) (uninsured claim); and a recovery from the tortfeasor's liability insurance is a nonarbitrable condition precedent to bringing an underinsured claim. Until there has been a recovery from the tortfeasor's insurer, the claimant's underinsured claim simply has not matured.[4]

---

3. In *Royal–Milbank Ins. Co. v. Busse*, 474 N.W.2d 441 (Minn.App.1991), claimant unsuccessfully tried the second option. There claimant agreed to settle for $544,000 with the tortfeasor's insurers who had $2.5 million of liability coverage. Claimant then gave his underinsured carrier a *Schmidt–Clothier* notice and, when the carrier declined to assume the tort settlement, sought to compel arbitration for underinsured benefits. The court of appeals denied arbitration, reasoning that because claim-ant conceded his tort claim was worth less than the $2.5 million tort limits, the tortfeasor's vehicle was not underinsured. Another way of putting it would be to say that plaintiff had not made the "best settlement" with the tortfeasor as required by *Schmidt v. Clothier*, 338 N.W.2d 256, 261 (Minn.1983).

4. The condition precedent for bringing an *uninsured* motorist claim is different from the underinsured claim. To bring an arbitration

Employers Mutual suggests that the trial judge, in a proceeding to compel or stay arbitration, might determine whether or not the tortfeasor's vehicle is underinsured. Apparently this suggestion is prompted by *Costello v. Aetna Cas. & Sur. Co.*, 472 N.W.2d 324, 326 (Minn.1991), in which we stated that "[w]here the coverage dispute arises on a motion to compel arbitration or to enjoin arbitration, the court ought to decide the issue in the first instance." In *Costello*, however, the tort action had been tried to a judgment prior to claimant's attempt to compel arbitration. The judgment was within the tortfeasor's policy limits, and we held plaintiff was estopped from claiming he was entitled to damages in excess of the tort insurance limits. Put differently, there was a district court trial adjudication that claimant did not meet the condition precedent for bringing an underinsured claim. Employers Mutual's suggestion in this case apparently assumes the trial judge would only decide whether or not claimant had a prima facie case for underinsured benefits, a determination which would be heard on an abbreviated record and which might or might not subsequently prove to be correct. We are not inclined to add another court proceeding with its own accompanying complications to auto injury litigation, nor do we see any need to do so.

It seems to us, on balance, that the fairest solution to our problem here is to continue to require an injured claimant to recover first from the tortfeasor's liability insurance before proceeding to arbitrate an underinsured benefits claim. We so hold.[5]

This rule avoids new complications and it is not unfair. If claimant does not choose to go to trial, she has the option of making a settlement with the tortfeasor's insurer (who must negotiate in good faith to avoid a bad faith claim), and, since *Broton* has

modified *Schmidt*, claimant is not required to absorb the gap if she settles in good faith for less than the liability policy limits. But much more important, denying claimants the option of proceeding first with an unmatured underinsurance claim reduces the likelihood of underinsurance becoming primary coverage, which would be contrary to the designed role of underinsurance and to the underwriting principles on which it is written. Then, too, amici point out that some insurers are deleting arbitration clauses from their underinsured coverages; if arbitrable underinsured coverage were to become primary coverage, this trend might be exacerbated.

There are all sorts of scenarios, and the parties, as good advocates, cite the extremes that favor their side. We think, however, our ruling here best meets the problem under our auto injury reparations system as it is presently constituted, and that within this framework the bar should be able to work out solutions that provide compensation for auto injuries that is reasonable, just, efficient, and relatively prompt. We shall see.

■ One last comment is in order here. Claimant Nordstrom asserts that if a court trial results in a judgment in excess of liability policy limits, the amount of underinsured motorist benefits would *still* have to be arbitrated. She cites no authority for this proposition, and the proposition is incorrect. The typical underinsured contract provides, "We will pay damages which an insured is *legally entitled* to recover from the owner or operator of an [underinsured motor vehicle]." (Emphasis added.) *See also* Minn.Stat. § 65B.43, subd. 19 (1992). The tort judgment establishes conclusively the damages to which the claimant is "legally entitled"; if such damages exceed the tort insurance limits, the excess is payable

claim for uninsured motorist benefits, the claimant does not have to recover first from the uninsured tortfeasor; the claimant need only show that the tortfeasor was uninsured. Most condition precedent disputes in uninsured motorist claims have involved the unidentified hit-and-run vehicle. *See, e.g., United States Fidelity & Guaranty Co. v. Fruchtman*, 265 N.W.2d 66 (Minn.1978).

5. In *Brosdahl v. Minnesota Mut. Fire & Cas.*, 437 N.W.2d 695 (Minn.App.1989), the court of appeals held that an injured claimant should be allowed to arbitrate his underinsured claim first, before proceeding with his tort action. We now overrule that holding.

by the underinsurer to the extent of its coverage without the need for arbitration. The underinsurer pays, not because it is estopped by the judgment, but because it has contractually agreed to pay the judgment less the tort liability insurance recovery.

Affirmed.