Leonard E. **REINHARDT**, Appellant,

v.

**MILWAUKEE MUTUAL INSURANCE COMPANY**, Respondent.

No. C8–94–1326.

Court of Appeals of Minnesota.

Dec. 6, 1994.

Review Denied Feb. 14, 1995.

Charles E. Mertensotto, Jill Johnson Sholts, Rowland & Mertensotto, St. Paul, for appellant.

Marianne Settano, Roseville, for respondent.

Considered and decided by DAVIES, P.J., and AMUNDSON and THOREEN,* JJ.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

DAVIES, Judge.

Appellant, an underinsured motorist (UIM), argues that the district court erred in denying his motion for summary judgment when he had, with the insurer's knowledge, established by jury trial the amount he is "legally entitled to recover" from the tortfeasor. Appellant also claims postjudgment interest. We vacate the judgment and remand.

## FACTS

In January 1988, appellant Leonard Reinhardt was driving a van owned by Supreme Electric, Inc., when the van was struck by a car driven by Joseph Kieffer. Kieffer was insured by Minnesota Mutual for $100,000 per accident. Supreme Electric had $300,000 of UIM coverage through respondent Milwaukee Mutual Insurance Company (Milwaukee). Appellant had another $300,000 of UIM coverage, also through Milwaukee, under his personal car policy.

Kieffer was killed instantly and his passenger later died from her injuries. Appellant and his seven passengers (four of them Reinhardts) were injured. The other Reinhardt family members individually sued Kieffer's personal representative, Supreme Electric, and appellant Reinhardt.

Reinhardt himself hired outside counsel and brought a motion for leave to assert a cross-complaint for personal injury damages against Kieffer's personal representative. Milwaukee received notice of the motion and did not object to the filing of the cross-complaint in one of the Reinhardt tort actions. Reinhardt's damages became an additional fact question in the consolidated trial that followed.

Milwaukee defended appellant Reinhardt and Minnesota Mutual defended Kieffer's estate through a seven-day trial, at which the jury found in favor of the plaintiffs, including Reinhardt. After deducting (as a collateral offset) medical benefits paid by Milwaukee, and adding costs and disbursements, Reinhardt's judgment against Kieffer was $274,-311.78. This judgment exceeded the money available from Kieffer's insurer and estate, giving rise to a UIM claim against Milwaukee, apparently in the amount of $185,-198.45.[1]

Milwaukee denied Reinhardt's UIM claim, alleging that the issue of its UIM liability must be determined in a separate trial; Reinhardt, therefore, brought this action against Milwaukee, asserting that the amount of his tort damages (and thus his UIM claim) had been established in the prior tort action. He moved for summary judgment, relying on *Employers Mutual Companies v. Nordstrom*, 495 N.W.2d 855 (Minn. 1993). The district court denied Reinhardt's motion, stating that applying *Nordstrom* would deprive Milwaukee of its due process right to present the question of damages to a fact-finder.

The issue of UIM liability was then tried to the court, which found that Reinhardt had in fact sustained total damages of only $15,-000, rather than $274,311.78, the amount of the earlier judgment. This left no tort damages unpaid, and resulted in no UIM liability. This appeal followed.

## ISSUES

I. Did the district court err in determining that the judgment in the prior tort action did not conclusively establish the amount of damages Reinhardt was legally entitled to recover?

II. If the initial judgment determines appellant's damages, is appellant entitled to recover postjudgment interest from the date of that judgment?

## ANALYSIS

■ Reinhardt challenges the district court's denial of his summary judgment motion. Appeal of a denial of a motion for summary judgment is properly taken from a subsequent judgment. *Kronzer v. First*

---

1. Because of the obvious liability, the multiple serious personal injury claims resulting from the accident, and the inadequate limits on Kieffer's policy, Minnesota Mutual had paid its policy limits ($100,000) before trial.

*Nat'l Bank of Mpls.*, 305 Minn. 415, 417 n. 1, 235 N.W.2d 187, 189 n. 1 (1975).

## I.

### A. Is Second Trial Required?

The Milwaukee policy provides:

Determination whether an insured person is legally entitled to recover damages or the amount of damages shall be made by agreement between the insured person and us. If no agreement is reached, the decision will be made *by litigation.*

(Emphasis in original eliminated; new emphasis added.)

■ Milwaukee contends that the first trial did not establish the amount Reinhardt is "legally entitled to recover," arguing that the policy language "by litigation" entitles it to an additional trial on the issue of damages.

The parties' arguments center around the final paragraph of the supreme court's opinion in *Employers Mutual Companies v. Nordstrom*, 495 N.W.2d 855, 858 (Minn. 1993):

One last comment is in order here. Claimant Nordstrom asserts that if a court trial results in a judgment in excess of liability policy limits, the amount of underinsured motorist benefits would still have to be arbitrated. She cites no authority for this proposition, and the proposition is incorrect. The typical underinsured contract provides, "We will pay damages which an insured is *legally entitled* to recover from the owner or operator of an [underinsured motor vehicle]." (Emphasis added.) The tort judgment establishes conclusively the damages to which the claimant is "legally entitled"; if such damages exceed the tort insurance limits, the excess is payable by the underinsurer to the extent of its coverage without the need for arbitration. The underinsurer pays, not because it is estopped by the judgment, but because it has contractually agreed to pay the judgment less the tort liability insurance recovery.

(Citation omitted.)

Milwaukee argues that this statement suggests a "substantial departure" from Minnesota UIM law and is only dictum. We agree the statement is dictum, but think, to the extent it may suggest a change in Minnesota law, the change is in arbitration practice and not directly applicable to this case. Thus, it is not bothersome for the purposes of this appeal either that the statement is dictum or that *Nordstrom* was released after trial in the original tort action here.

Milwaukee relies on *Milwaukee Mut. Ins. v. Currier*, 310 Minn. 81, 245 N.W.2d 248 (1976), to argue that the *Nordstrom* dictum represented a "substantial departure" from the way UIM law had previously been practiced in Minnesota. In *Currier*, the issue was whether a defendant could be enjoined from proceeding with *arbitration* after a prior jury verdict became conclusive as to Currier's damages. *Id.* at 82, 245 N.W.2d at 250. *Currier* held the insurer could not rely on the jury verdict because it was bound by its agreement to arbitrate the claim. *Id.*

It is decisive that the policy in this case gives the parties a right to litigation, not arbitration. Thus, the cases based on *Currier* are distinguishable because they involve arbitration, rather than litigation, clauses. *See Liberty Mut. Ins. v. American Family Mut. Ins.*, 463 N.W.2d 750, 751 (Minn.1990) (insured entitled to arbitrate UIM claim even after jury trial); *National Indemnity v. Farm Bureau Mut. Ins.*, 348 N.W.2d 748, 749 (1984) ("Arbitrators * * * are not bound by the factual findings of a jury in a prior tort action."); *Arney v. American Family Ins.*, 429 N.W.2d 271, 273 (Minn.App.1988) (arbitration "must run its course" even where insurer's subrogation rights effectively eliminated by jury verdict); *Benson v. Johnson*, 392 N.W.2d 890, 898 (Minn.App.1986) (jury verdict "would be accorded whatever weight the arbitrators deem justified"); *Eckblad v. Farm Bureau Mut. Ins.*, 371 N.W.2d 78, 79 (Minn.App.1985) ("A jury verdict does not bar the parties from proceeding to arbitration."), *pet. for rev. denied* (Minn. Sept. 26, 1985).

Significantly, in the only case citing *Currier* that involved a subsequent court action, rather than an arbitration proceeding, the court held that estoppel barred the right to

relitigate. *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 649 (Minn.1990).[2]

■ Based on our reading of these cases, we do not agree with Milwaukee that *Nordstrom* represents a relevant departure from existing case law, though it may presage a "radical departure" from existing case law (*Currier*) relating to arbitration practice, as we therefore conclude the insurer is not entitled to relitigate the issue of damages. The amount of damages has been determined by litigation; Milwaukee is bound by the first judgment and is not entitled to a second bite at the apple.[3]

**B. Due Process**

■ Milwaukee also argues that applying *Nordstrom* here would (1) deprive it of its constitutional rights to a jury trial and to be heard, (2) be contrary to public policy, and (3) conflict with established rules of insurance policy construction. But in order to hold as Milwaukee urges, we would have to reach a conclusion that is the exact opposite of the Minnesota Supreme Court's statement in *Nordstrom*—something we are not inclined to do—especially since the supreme court this year reaffirmed the language in *Nordstrom* by stating:

> The tort judgment establishes conclusively the damages to which the claimant is legally entitled, and if these damages exceed the tortfeasor's liability insurance limits, the excess is payable by the underinsurance carrier to the extent of its coverage without the need for arbitration.

*Richards v. Milwaukee Ins.*, 518 N.W.2d 26, 28 (Minn.1994).

We note also that foreign courts have rejected similar constitutional arguments. *See Briggs v. American Family Mut. Ins.*, 833 P.2d 859, 864 (Colo.App.1992) (no due process violation where insurer had notice and opportunity to intervene in prior default proceeding); *Aetna Cas. & Sur. v. Souras*, 78 Md.App. 71, 552 A.2d 908, 911 (1989) (no due process violation where insurer was aware of action prior to trial).

Regardless of the *Nordstrom* opinion, Milwaukee should have been aware that it would likely be liable for UIM coverage, given the multiple injuries and the low liability limits. Minnesota Mutual carried the defense on Milwaukee's behalf because Milwaukee stood to be liable for any excess over $100,000. Perhaps Milwaukee, if it lacked confidence in the vigor of Minnesota Mutual's defense, should have asked to take over the defense itself (even though against the claims of its own insured, Reinhardt).

**II.**

**Postjudgment Interest**

■ Reinhardt argues that he is entitled to postjudgment interest from the date of the tort judgment because that judgment conclusively established the amount of his UIM claim. But that judgment did not establish the UIM claim; it only established the starting point from which UIM benefits were to be calculated.

It is well-settled that there must be a liquidated or readily ascertainable amount in order for interest to accrue on a damage award. *See Eide v. State Farm Mut. Auto. Ins.*, 492 N.W.2d 549, 556 (Minn.App.1992) (obligation to pay interest does not arise until amount of damages is "readily ascertainable"). In an ordinary tort case, the sum upon which the interest is based is conclusively determined upon judgment. Here, however, the multiple claims against Kieffer may not have been resolved contemporaneously with Reinhardt's first judgment. The portion of the various judgments that could be satisfied by Kieffer's liability coverage and, thus, what amount would fall on the

---

**2.** *Costello v. Aetna Cas. & Sur.*, 472 N.W.2d 324 (Minn.1991), does not fit neatly into either the arbitration or litigation category. The court there held that the case involved a coverage dispute and the parties had not agreed to submit coverage disputes to arbitration. Thus, the matter should be determined by a court. *Id.* at 327. Since one court had already determined the issue, the other court was held bound by the earlier determination of coverage. *Id.*

**3.** This decision might also be based on this policy provision:

> If suit is brought to determine legal liability or damages without informing us in writing, we are not bound by any resulting judgment.

This paragraph suggests that Milwaukee conversely agrees—if notified—to be bound by the "resulting judgment."

UIM insurer was perhaps uncertain. UIM liability also depended on what assets the tortfeasor's estate had available to satisfy claims, and on how those assets would be allocated to satisfy the various judgments. The obligation to Reinhardt may or may not have been liquidated at the time of the tort judgment.

Further, the issue of interest was not addressed by the trial court. Therefore, we remand for a determination of both the precise UIM obligation and the interest issue.

## DECISION

The initial judgment conclusively established the amount of appellant's tort damages. The district court erred by redetermining damages independent of the prior judgment and in ordering judgment based on that redetermination. The finality of the determination of damages in the first action does not violate due process. The district court did not err in denying appellant's summary judgment motion, however, because the UIM calculation was not made in the initial action. Judgment is vacated and the case is remanded for a determination of the UIM and interest obligations.

**Judgment vacated and case remanded.**