David E. MALMIN and Jeanette
Malmin, Respondents,

v.

MINNESOTA MUTUAL FIRE &
CASUALTY COMPANY,
Appellant.

No. C1–95–1274.

Supreme Court of Minnesota.

Sept. 5, 1996.

Eric J. Magnuson, Glen M. Goldman, Minneapolis, for Apellant.

Kay Nord Hunt, Lummer, Nelson, Cole & Stageberg, P.A., Minneapolis, for Respondents.

OPINION

KEITH, Chief Justice.

Appellant Minnesota Mutual Fire and Casualty Company (Minnesota Mutual) has

obtained review of a court of appeals decision in favor of respondents David and Jeanette Malmin. Answering a certified question from Hennepin County District Court in the affirmative, the court of appeals held that the Malmins were entitled to recover approximately $109,000 in underinsured motorist benefits from Minnesota Mutual. On appeal to this court, Minnesota Mutual argues that it should not be bound by the damages award obtained by its insured, David Malmin, in a personal injury action arising out of an automobile accident which exceeded the tortfeasor's liability coverage because Malmin did not notify Minnesota Mutual of the pending tort action, nor did he obtain Minnesota Mutual's consent before pursuing his personal injury claim. We hold that the consent to sue clause relied upon by Minnesota Mutual to defend Malmin's underinsured motorist coverage claim is violative of the public policy behind Minnesota's No–Fault Automobile Insurance Act. Therefore, we answer the certified question from the district court in the affirmative.

I.

On October 20, 1990, respondent David Malmin was involved in an automobile accident with an automobile driven by Nancy J. Nau Olson. Malmin sustained personal injuries and was treated for neck and back problems. Olson was insured by American Family Insurance Company and had an auto insurance liability limit of $50,000. At the time of the accident, Malmin had an auto insurance policy with appellant Minnesota Mutual with an underinsured motorist coverage limit of $300,000.

Malmin brought a personal injury claim against Olson seeking damages for the October 20, 1990 auto accident. Olson's insurer defended and trial was held in Hennepin County District Court in July 1994. Two weeks prior to trial, on June 15, 1994, Malmin's trial counsel faxed a letter to a Minnesota Mutual claim representative to confirm their recent telephone conversation regarding no-fault benefits received by Malmin from Minnesota Mutual for his medical expenses. Malmin's attorney requested a summary of no-fault benefits paid to Malmin and copies of all medical bills submitted to Minnesota Mutual by Malmin. In addition, Malmin's attorney advised Minnesota Mutual "that in two weeks we are going to be trying the personal injury claim of our client David Malmin." As Minnesota Mutual notes in its brief, however, the letter did not explicitly notify Minnesota Mutual of any potential underinsured motorist claim, nor was there any reference to the liability limits on Olson's insurance policy.

On July 11, 1994, the jury returned a verdict in favor of Malmin and awarded him $158,973.96 in damages. Following the verdict, Olson's insurer paid Malmin $50,000, the liability limit on Olson's insurance policy. On July 21, 1994, Malmin's attorney sent a letter to Minnesota Mutual, notifying the insurer of Malmin's underinsured motorist (UIM) claim and demanding payment of the damages awarded to Malmin in excess of Olson's $50,000 liability coverage. Minnesota Mutual refused payment of the approximately $109,000 sought by Malmin, contending that Malmin's insurance policy required notice to Minnesota Mutual of a potential UIM claim and written consent from the insurer to sue.[1]

Malmin then brought this action in Hennepin County District Court, seeking payment of UIM benefits from Minnesota Mutual. Malmin moved for summary judgment, arguing that the written consent to sue provision of his policy with Minnesota Mutual was void and unenforceable and contrary to the policy behind Minnesota's no-fault statute. Malmin

---

1. Malmin's insurance policy with Minnesota Mutual contains the following language:

A. COVERAGE

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle."

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

The policy further requires that the insured "[p]romptly send [the insurer] copies of the legal papers if a 'suit' is brought."

also argued that Minnesota Mutual was aware of his lawsuit involving Olson due to the June 15, 1994 letter from his attorney, and had therefore waived any right to object to his UIM claim. While Minnesota Mutual admitted that it was aware of Malmin's personal injury claim against Olson, it contended that it had no notice of Malmin's potential UIM claim, nor had Malmin invited Minnesota Mutual's participation in the lawsuit. Minnesota Mutual argued that its requirement of prior written consent to sue was valid and necessary to protect its interests and right to intervene. Absent prior notice and written consent, Minnesota Mutual asserted that it should not be bound by Malmin's damages award and his personal injury claim should be retried.

On December 21, 1994, the district court denied Malmin's motion for summary judgment, finding that Malmin had failed to comply with the prior notice and consent provisions of his insurance policy. The court ruled that due to the lack of notice or opportunity to intervene, Minnesota Mutual was not bound by the verdict in Malmin's lawsuit. Accordingly, Malmin would have to relitigate his personal injury action and give Minnesota Mutual an opportunity to participate. Malmin successfully moved the court to certify the consent to sue issue to the court of appeals pursuant to Minn. R. Civ.App. P. 103.03(h).[2] The court of appeals held that the consent to sue clause contained in the insurance policy was "void and unenforceable under the Minnesota No–Fault Act and case law interpreting that Act," and concluded that Malmin was entitled to recover UIM benefits from Minnesota Mutual without relitigating his personal injury claim. *Malmin v. Minnesota Mut. Fire & Casualty Co.,* 541 N.W.2d 4, 5, 7 (Minn.App.1995).

## II.

Appellant Minnesota Mutual asserts that the court of appeals erred when it held that an automobile insurance carrier must pay underinsured motorist (UIM) benefits to its insured equal to the amount of damages awarded in excess of the tortfeasor's liability coverage, even when the insurer has not received notice of a potential UIM benefits claim and is given no opportunity to safeguard its interests. Minnesota Mutual argues that a "consent to sue" clause is a valid means of protecting the insurer's financial interests and due process rights, does not unduly burden an insured's right to pursue a personal injury claim against the tortfeasor, and therefore is not contrary to the purposes of the No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (1994).

Minnesota Mutual contends that the consent to sue clause in its contract has been used by numerous insurance carriers since 1956 "and undoubtably is contained in many millions of insurance policies." Nonetheless, prior to this case, no Minnesota court has considered whether such language adheres to the policy and purposes of the No–Fault Act. We note, however, that on several other occasions we have voided provisions commonly used in automobile insurance policies due to perceived conflicts with the No–Fault Act's provisions. *See Schmidt v. Clothier,* 338 N.W.2d 256, 261 (Minn.1983) (insurance policy provisions requiring insured to exhaust tortfeasor's liability limits before underinsured motorist benefits will be paid are void as against public policy of No–Fault Act); *Roering v. Grinnell Mut. Reins. Co.,* 444 N.W.2d 829, 833 (Minn.1989) (insurance policy exclusion provision conflicts with coverage guaranteed by No–Fault Act and is therefore void); *Wasche v. Milbank Mut. Ins. Co.,* 268 N.W.2d 913, 917–18 (Minn.1978) (clause in insurance policy that prohibited "stacking" of coverages is void under No–Fault Act).

Malmin argues that the effect of Minnesota Mutual's consent clause is contrary to the

2. The question certified by the district court to the court of appeals reads as follows:

Is an injured person who has received a jury verdict on all liability and damage issues against a tort feasor [sic] in an amount in excess of the tort feasor's underlying liability limits, entitled to a recovery of the excess amount from his underinsured motorist carrier, without a full relitigation of all liability and damage issues in a second action against the underinsured motorist carrier, when the underinsured motorist policy contains a provision that states: "any judgment for damages arising out [of] a 'suit' brought without our written consent is not binding upon us."

purposes of the No–Fault Automobile Insurance Act as stated in Minn.Stat. § 65B.42 (1994): to relieve the economic distress of victims of automobile accidents by providing prompt payment of economic loss benefits without regard to fault; to speed the administration of justice and ease the burden of litigation on the courts and the litigants; and to correct imbalances and abuses in the operation of the tort liability system. *Id.* These goals, he asserts, are not served by a consent to sue clause which increases the burdens on accident victims by requiring additional time in court and duplicative litigation costs, and grants the insurer the power to consent to only financially favorable verdicts. Malmin further notes that an insurer may refuse to consent for any number of reasons, including dissatisfaction with the insured's choice of attorney or forum, which would then require litigation of whether the insurer's decision not to consent was "reasonable."

Nonetheless, Minnesota Mutual argues that the consent to sue provision in its policy is necessary to protect its financial interests. First, Minnesota Mutual asserts that an insurer would otherwise have to pay *any* judgment obtained by its insured, including default or consent judgments, even though the insurer was unaware of the pending lawsuit. Second, the tortfeasor's insurance carrier may have far less interest in defending against the injured party's suit than the UIM carrier. For example, if the tortfeasor has low liability insurance limits, the defending insurer has less incentive to vigorously defend the case, while the UIM carrier's financial exposure is increased. Thus, Minnesota Mutual contends that the UIM carrier should have the right to intervene and protect its financial interests.[3] Third, Minnesota Mutual argues that it has a due process right to notice of the lawsuit under the United States Supreme Court's holding in *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). In short, Minnesota

Mutual insists that it should not be required to pay Malmin's UIM claim because it was not allowed to participate in Malmin's lawsuit, it never expected that Malmin's injuries would result in such a large damages award, and it was never notified that Malmin intended to claim UIM benefits.

At the outset of our analysis, we note that Malmin has mistakenly relied upon this court's decision in *Employers Mut. Cos. v. Nordstrom* in support of his reasoning. 495 N.W.2d 855 (Minn.1993). In *Nordstrom,* this court held that an injured motorist must pursue his or her claim against the tortfeasor to trial or settlement before seeking UIM benefits from his or her insurer. *Id.* at 855. In that case, we rejected Nordstrom's complaint that such a rule would require her to litigate two claims: one in district court against the tortfeasor, and one through arbitration with her insurer. *Id.* at 858–59. We explained that under Nordstrom's insurance policy, she would recover all damages which she was "legally entitled" to receive:

> The tort judgment establishes conclusively the damages to which the claimant is "legally entitled"; if such damages exceed the tort insurance limits, the excess is payable by the underinsurer to the extent of its coverage without the need for arbitration. The underinsurer pays, *not because it is estopped by the judgment,* but because it has contractually agreed to pay the judgment less the tort liability insurance recovery.

*Id.* (emphasis added).

This court's decision in *Nordstrom* did not concern the effect of a consent to sue clause on Nordstrom's UIM claim against her insurer. The dicta quoted above merely discusses the mechanism for recovery of UIM benefits: after the insured receives a judgment against the tortfeasor, his or her insurer is bound to pay UIM benefits as required by the insurance policy. Minnesota Mutual does not dis-

---

**3.** Pursuant to our rules of civil procedure, "anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Minn. R. Civ. P. 24.01. *See Minneapolis Star & Tribune Co. v. Schumacher,* 392 N.W.2d 197, 207 (Minn.1986) (setting forth four-part test to be applied to petitions to intervene by nonparties). *See also Husfeldt v. Willmsen,* 434 N.W.2d 480, 482 (Minn.App.1989) (applying four-part test to petition to intervene by auto insurance carrier).

pute that this is the required procedure, but correctly asserts that the case at bar raises a different issue relating to the enforceability of a consent to sue clause within the insurance contract itself. Thus, *Nordstrom* is not directly applicable to this case. *See also Richards v. Milwaukee Ins. Co.*, 518 N.W.2d 26, 28 (Minn.1994) (citing *Nordstrom* in support of its holding that "actual damages" suffered by insured do not include amounts paid by no-fault coverage); *Reinhardt v. Milwaukee Mut. Ins. Co.*, 524 N.W.2d 531, 534–35 (Minn.App.1994), *pet. for rev. denied*, (Minn., February 14, 1995) (under *Nordstrom*, UIM carrier with notice and opportunity to intervene in insured's tort action is bound by determination of actual damages by court in tort action).

Both parties note that there is a split among other state courts on the enforceability of a consent to sue clause. Some states have ruled that such clauses are void as against public policy, while others have viewed the consent clause as a valid means of protecting the insurer from fraudulent or collusive agreements between its insured and the tortfeasor. *See Moorcroft v. First Ins. Co. of Hawaii*, 68 Haw. 501, 720 P.2d 178, 180 (1986) (a consent to sue clause contained in an auto insurance policy was valid and enforceable where the clause did not require forfeiture of the insured's claim and the policy permitted arbitration, rather than relitigation, of the insured's UIM benefits); *United States Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 674 (Tex.Ct.App.1993); *GEICO v. Lichte*, 792 S.W.2d 546, 548 (Tex.Ct.App. 1990) (upholding enforcement of consent to sue clause). *See also Sands v. Andino*, 404 Pa.Super. 238, 590 A.2d 761, 765 (1991); *Connell v. Liberty Mut. Ins. Co.*, 841 F.Supp. 578, 583–84 (D.Del.1994), *aff'd*, 37 F.3d 1486 (3rd Cir.1994) (under Delaware law, when insured obtains final judgment against tortfeasor, underinsured motorist carrier has option of offensively asserting collateral estoppel doctrine or relitigating issue of damages).

Nonetheless, we find that the majority of state courts considering this issue have refused to enforce consent to sue clauses against insureds with otherwise valid claims for UIM benefits. For example, in *Zirger v. Gen. Accident Ins. Co.*, the Supreme Court of New Jersey held that an insurer was estopped from forcing relitigation of the damages award obtained by its insured despite the language of an arbitration clause in its UIM policy. 144 N.J. 327, 342, 676 A.2d 1065, 1073 (1996). Interpreting language identical to the consent to sue clause at issue in Minnesota Mutual's policy, the court opined:

> In our view, an insurance policy provision that would require an insured to litigate to conclusion the issues of liability and damages in a personal-injury action against the tortfeasor, on notice to the UM/UIM carrier, only to be required to relitigate those same issues in an arbitration proceeding with the UM/UIM carrier, cannot be reconciled with the policy considerations that prompted the Legislature to mandate the availability of UM/UIM coverage for all insureds. Just as the Legislature's purpose can be thwarted by unreasonable restrictions on or exclusions from coverage, so too is the legislative goal obstructed by conditions that delay unreasonably the payment of the benefits that UM/UIM coverage was intended to provide.

*Id.* 676 A.2d at 1074 (citation omitted). Similarly, in *Briggs v. Am. Family Mut. Ins. Co.*, the Colorado Court of Appeals held that, in light of the policy behind Colorado's uninsured motorist statute of compensating injured drivers for their losses, a consent to sue clause in an insurance policy "dilutes, conditions and limits the character of the coverage mandated in the [underinsured motorist] statute." 833 P.2d 859, 862 (Colo.Ct. App.1992). That court noted that to require an insured to relitigate the question of UIM benefits after receiving a damages award against the tortfeasor, at a minimum, violates the intent of the uninsured motorist act and results in multiple litigation, and at worst may lead to a loss of benefits altogether if the insured receives an unfavorable second verdict. *Id.* The Supreme Court of Ohio reached the same conclusion in *Motorists Mut. Ins. Cos. v. Handlovic*, holding that an insured may not "avoid a valid judgment obtained by an insured against an underinsured motorist *solely* because the insurer did not provide written consent to the prosecu-

tion of the action resulting in the judgment." 23 Ohio St.3d 179, 492 N.E.2d 417, 419 (1986). The court stated that if the insured notifies his insurer of his intent to prosecute a personal injury claim, generally *both* the insured and the insurer will be bound by the outcome of the lawsuit. *Id. See also Kremer v. Am. Fam. Mut. Ins. Co.*, 501 N.W.2d 765, 768–69 (S.D.1993) ("consent to be bound" provisions in auto insurance policies erect arbitrary boundaries to recovery by insured of valid damages judgment and are therefore unenforceable); *Champion Ins. Co. v. Denney*, 555 So.2d 137, 139–40 (Ala.1989) (default judgment obtained by insured against uninsured motorist was binding on insurer without its consent where insurer had notice and opportunity to intervene); *Nationwide Mut. Ins. Co. v. Webb*, 291 Md. 721, 436 A.2d 465, 476 (1981) (collecting 22 state court decisions which have invalidated "consent to sue" clauses).

■ We concur with the reasoning of courts in other jurisdictions that have refused to enforce consent to sue clauses in automobile insurance contracts: as noted above, forcing the insured to relitigate his or her claim against a tortfeasor simply because the insured neglected to obtain written consent from the insurer violates the public policy behind our No–Fault Act and erects unnecessary barriers to the insured's recovery of UIM benefits. Although Minnesota Mutual's arguments have some merit, a consent to sue provision is not a valid means of protecting the insurer's interests. While we agree that the insurer should receive notice of, and an opportunity to participate in, the insured's personal injury claim, we do not agree that

the insurer can require its insured to seek written consent to sue before the insurer will be bound by the judgment.[4] Accordingly, we hold that a consent to sue clause which requires written consent from the insurer before the insurer will be bound by a judgment against a tortfeasor is contrary to the purposes of the No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (1994). Thus, Minnesota Mutual is bound by the damages award obtained by the Malmins in Hennepin County District Court.

Certified question answered in the affirmative.

COYNE, Justice (dissenting).

I dissent. I will not countenance an insurer's breach of its contract of insurance. Neither, however, can I find any justification for relieving the insured of all obligation to comply with the terms of his insurance policy.

Here the insured carefully orchestrated his underinsured motorist claim. Following the accident of October 20, 1990, Malmin made a claim for basic economic loss benefits. There was, however, nothing about Malmin's medical expenses or lost wages that suggested to Minnesota Mutual that he had sustained a serious injury. Almost 4 years went by without the slightest indication that Malmin contemplated an underinsured motorist claim. It was not until June 15, 1994, when Malmin's lawyer wrote to Minnesota Mutual requesting a summary of the no-fault benefits it had paid Malmin, that the insurer was informed that Malmin had sued someone for damages caused by injuries sustained in the

4. Minnesota Mutual persuasively argues that the insurer should be granted some opportunity to protect its financial interests before the resolution of the insured's claim against the tortfeasor. As the United States Supreme Court has noted, procedural due process principles require notice and an opportunity to be heard before a party can be deprived of rights or possessions. *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). In this case, Minnesota Mutual is now responsible for payment of a tort judgment obtained by its insured despite the fact that the insurer received neither an opportunity to participate in the litigation, nor simple notice of Malmin's intent to seek UIM benefits. In light of the Supreme Court's interpretation of procedural due process require-

ments in *Fuentes v. Shevin*, we agree with Minnesota Mutual that insurers deserve more protection. Therefore, we note that while a "consent to sue" clause is invalid under the No-Fault Act, a provision within an insurance contract which requires the insured to notify his or her insurer of the commencement of a lawsuit against a tortfeasor within a limited period of time (*i.e.*, 60 days) after service of process comports with due process principles and does not raise the same concerns under the No-Fault Act. Such a provision would permit the insurer to consider the nature of the tort claim and the tortfeasor's liability limits, and thereby determine whether to attempt to intervene in the litigation in order to protect its own financial interests.

October 20, 1990 accident. Included in the letter was the casual statement "that in two weeks we are going to be trying" Malmin's personal injury claim. In the context of the letter, the statement appeared only intended to elicit a prompt response to the request for the summary of benefits. The remark did not identify the defendant. Neither did Malmin's lawyer advise Minnesota Mutual of either the limits of the defendant's liability policy or his estimate of his client's damages. Surely, Malmin's counsel cannot now assert that he was unaware, 2 weeks before trial, of the limits of Olson's policy or the fact that he anticipated—or at least hoped—that the evidence would support an award in excess of Olson's $50,000 limits! In denying Malmin's motion for summary judgment, the district court stated that Malmin did *not* notify Minnesota Mutual of his action against Olson, thereby depriving Minnesota Mutual of any opportunity to intervene. From the circumstances I can infer only that the letter was intended to provide something less than meaningful notification of the action against Olson.

It may be that permitting an insurer that is promptly notified of the insured's personal injury action against an uninsured or underinsured motorist to withhold consent to the litigation until the result is known so that it can accept a low verdict and reject a high verdict affords the insurer an unfair advantage. But denying the insurer the right to pick and choose which verdicts it will accept as binding does not mean that it is not entitled to prompt notice of the insured's lawsuit.

The Minnesota Mutual policy contains, in addition to the "consent to sue" clause, a provision detailing "Duties in the Event of Accident, Claim, Suit or Loss":

\*     \*     \*     \*     \*     \*

(b) Promptly send us copies of the legal papers if a "suit" is brought.

With respect to claims against underinsured motorists the policy incorporates the notice provisions concerning a tentative settlement which this court laid out in *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), and it also requires the insured to allow the insurer 30 days in which to meet the settlement offer in order to preserve the insurer's rights against the tortfeasor.

The majority strikes the "consent to sue" clause from the insuring agreement (I assume the majority intends the rest of the insuring agreement to remain intact) on the ground that it offends public policy.[1] The requirement that the insured promptly send the insurer "copies of the legal papers if a 'suit' is brought," which is one of the insured's specified duties in the event of accident, claim, suit or loss, remains in full force and effect. There is and can be no serious contention that this requirement is violative of public policy. Nevertheless, first the court of appeals and now the majority ignore not only the insured's contractual obligation but also the district court's determination that the insured had breached that obligation. Next the majority follows on the heels of the court of appeals' erroneous conclusion that answering the certified question in the affirmative justifies holding that Minnesota Mutual is bound by the damages awarded in Malmin's action against Olson. Of course, this conclusion is a non sequitur, for as the majority concedes, Minnesota Mutual was deprived of notice and of any opportunity to intervene in Malmin's lawsuit. Therefore, answering the certified question does not dispose of this action and the majority's decision is both improper and erroneous.

In short, if the courts insist on casting the insurer in the role of the goose that lays the golden egg, then what is sauce for the goose ought to be sauce for the insured gander. The insured ought to be required to honor his or her contract just as insurers must be required to honor theirs.

Whether the certified question is answered in the affirmative or the negative, I would reverse the ruling that Minnesota Mutual is bound by the award in Malmin's action against Olson and remand to the district court for further proceedings.

ANDERSON, Justice (dissenting).

I join in the dissent of Justice Coyne.

1. The validity of this clause has, however, been   unchallenged in Minnesota for 40 years.