Christy L. MOUNDSON, Respondent,

v.

Lucille I. BITZAN, et al., Respondents,

**Grinnell Mutual Reinsurance Company, Appellant.**

No. C2–98–1251.

Court of Appeals of Minnesota.

Jan. 12, 1999.

Frederick L. Grunke, Rajkowski Hansmeier, Ltd., St. Cloud, for respondent Moundson.

John C. Lervick, Swenson, Lervick, Syverson, Anderson, Trosvig & Jacobson, P.A., Alexandria, for respondents Bitzans.

Ken D. Schueler, Dunlap & Seeger, P.A., Rochester, for appellant.

Considered and decided by PETERSON, Presiding Judge, KLAPHAKE, Judge, and ANDERSON, Judge.

## O P I N I O N

KLAPHAKE, Judge.

Respondent Christy L. Moundson, f/k/a Christy L. Schmitz (Moundson), brought this declaratory judgment action against respondents Lucille I. Bitzan and Patrick J. Bitzan (the Bitzans) and against appellant Grinnell Mutual Reinsurance Company (Grinnell), the Bitzans' underinsured motorist (UIM) carrier. Moundson's complaint requested a declaration extinguishing Grinnell's subrogation rights against her, obligating Grinnell to pay UIM benefits to the Bitzans, prohibiting Grinnell from requiring the Bitzans to relitigate issues determined in the underlying tort action, and directing the Bitzans to execute a full and final release in her favor.

On cross-motions for summary judgment, the district court granted Moundson's motion and ordered Grinnell to pay UIM benefits to the Bitzans. Grinnell appeals, arguing that the district court erred in concluding (1) a settlement had been reached between the Bitzans and Moundson, of which Grinnell received constructive notice under *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983); and (2) Grinnell's subrogation rights against Moundson were waived and extinguished by Grinnell's failure to preserve those rights in accordance with *Schmidt.* We affirm that part of the district court's decision ordering Grinnell to pay UIM benefits to the Bitzans, but reverse its determination that Grinnell has waived its subrogation rights.

## FACTS

On August 14, 1992, Moundson was driving a motor vehicle insured by Allstate Insurance Company under a policy with liability limits of $100,000. She struck a vehicle driven by Lucille Bitzan, who had $100,000 in UIM coverage with Grinnell.

The Bitzans sued Moundson. On October 11, 1996, a jury returned a verdict in the Bitzans' favor for $140,365.68. On October 15, the Bitzans contacted Grinnell and notified it of their intent to claim UIM benefits.

After the verdict was returned, but before the trial court ruled on Moundson's new trial motion, Moundson offered to settle with the Bitzans. The parties agreed that the settlement "would be void in the event that [it] would entitle Grinnell to relitigate issues decided in the previous trial or otherwise jeopardize Bitzans' right to recover UIM benefits from Grinnell."

On November 7, the Bitzans informed Grinnell of their "tentative" settlement with Moundson and gave Grinnell *Schmidt* notice.

On November 15, the trial court denied Moundson's new trial motion, ordered judgment for the Bitzans for $140,365, and stayed entry of final judgment for 30 days.

That same day, after speaking with Grinnell, the Bitzans decided to withdraw their *Schmidt* notice. On November 19, the Bitzans contacted Moundson and explained that they could not release her and would wait until judgment was entered before accepting payment from her. Later that day, Moundson contacted the Bitzans, claiming that they had "a binding settlement agreement." The Bitzans again contacted Moundson and denied the settlement.

On November 22, the Bitzans advised Grinnell that their UIM claim would probably be $40,365, that they would seek entry of judgment in the underlying tort action "as soon as the thirty (30) day stay expires on December 15," and that they did not agree to settle with Moundson when they sent their *Schmidt* notice to Grinnell.

On December 5, Grinnell contacted the Bitzans and Moundson, stating it was "confused as to the status of this litigation," due to Moundson's claim that the matter had been settled and the Bitzans' denial of that settlement and withdrawal of their *Schmidt* notice. Moundson thereafter brought this declaratory judgment action against the Bitzans and Grinnell.

Judgment was entered in the underlying tort action on December 18; on February 12, Moundson made partial payment to the Bitzans of $100,944 and received a partial release. Moundson did not appeal from the trial court's denial of her new trial motion or from the final judgment.

In this declaratory judgment action, the district court determined that Grinnell was obligated to pay UIM benefits to the Bitzans, but that Grinnell had failed to preserve its subrogation rights against Moundson after receiving constructive notice under *Schmidt* that the Bitzans had settled with Moundson. Grinnell appeals.

## ISSUES

1. Did the district court err in determining that Moundson and the Bitzans had settled?

2. Did the district court err in determining that Grinnell had failed to preserve its subrogation rights against Moundson because it had received constructive notice of that settlement under *Schmidt?*

3. Did the district court err in ordering Grinnell to pay UIM benefits to the Bitzans?

## ANALYSIS

■ Summary judgment is properly granted when no genuine issues of material fact exist and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. Although Grinnell argues that factual issues exist involving the parties' settlement, the disputes here arise not from conflicting, material facts, but from the legal conclusions that may be drawn from those facts. When the material facts of a case are not in dispute, this court applies a de novo standard of review to determine whether the trial court erred in its application of the law. *Washington v. Milbank Ins. Co.,* 562 N.W.2d 801, 804 (Minn.1997).

### I.

■ The proposed settlement between Moundson and the Bitzans specifically stated that it "would be void in the event that [it] would entitled Grinnell to relitigate issues decided in the previous trial or otherwise jeopardize Bitzans' right to recover UIM benefits from Grinnell." On appeal, Moundson and the Bitzans argued that Grinnell could not require relitigation of the amount of damages because the proposed settlement occurred post-verdict. However, the mere return by the jury of a verdict is not legally

enforceable without entry of a judgment. Rather, under the terms of the typical UIM policy, it is the "tort judgment [that] establishes conclusively" the damages to which a UIM claimant is "legally entitled." *Employers Mut. Cos. v. Nordstrom*, 495 N.W.2d 855, 858–59 (Minn.1993). Thus, if a UIM claimant settles with a tortfeasor post-verdict, but before entry of judgment, the UIM carrier may require relitigation of the amount of damages in a subsequent UIM proceeding. *See id.* (because "tort judgment establishes conclusively the damages to which the claimant is 'legally entitled,' [under a typical UIM policy] if such damages exceed the tort insurance limits, the excess is payable by the [UIM carrier] to the extent of its coverage without the need for arbitration" or relitigation to determine the amount of UIM benefits).

Moundson nevertheless argues that a UIM insured can collect benefits on the basis of a verdict, without entry of final judgment, citing language in *Malmin v. Minnesota Mut. Fire & Cas. Co.*, 552 N.W.2d 723 (Minn.1996). A careful reading of *Malmin* fails to support Moundson's position. Although the facts of *Malmin* do not indicate whether a judgment was entered on the jury's verdict, the supreme court's holding speaks of a "judgment." *Id.* at 728 (because "a consent to sue clause which requires written consent from the insurer before the insurer will be bound by a judgment against a tortfeasor is contrary to the purposes of the [No–Fault Act]," UIM carrier therefore "bound by the damages award obtained" by its insureds). Contrary to Moundson's assertion, *Malmin* does not hold that a UIM insured can collect benefits on the basis of a verdict, without entry of final judgment.

We therefore conclude that Grinnell was correct in warning the Bitzans that settlement with Moundson would jeopardize their right to claim UIM benefits without relitigating the issue of damages. After that warning, the Bitzans expressly communicated to Moundson that they would not settle due to this contingency and they refused to accept tender of her payment until after final judgment was entered. Because the Bitzans expressly disavowed the settlement, it never

became final and binding on the parties. *Cf. Jallen v. Agre*, 264 Minn. 369, 373, 119 N.W.2d 739, 743 (1963) (settlements are contractual in nature, and to be enforceable must include definite offer and acceptance).

Moundson claims that she decided not to appeal the trial court's denial of her posttrial motions because she believed she had settled with the Bitzans. However, the Bitzans expressly disavowed the settlement prior to expiration of the time to appeal. Moundson could have filed an appeal to this court and was not prejudiced by the Bitzans' rejection of the settlement.

The district court therefore erred in determining that Moundson and the Bitzans had settled. The proposed settlement contained a contingency regarding relitigation of damages. When that contingency failed and the Bitzans disavowed the settlement, it became void and was not binding on the parties.

## II.

The district court determined that Grinnell had received constructive notice of settlement under *Schmidt*. However, because there was no settlement, this case could not have involved a constructive *Schmidt* notice. In *Schmidt*, 338 N.W.2d at 263, the supreme court articulated a procedure by which an injured insured could settle with a tortfeasor and give its UIM carrier an opportunity to preserve its subrogation rights. Although Moundson's attempt to utilize a *Schmidt* notice was creative, it was not proper. The procedure outlined in *Schmidt* was not intended to allow a tortfeasor to limit its liability by waiting until a verdict is rendered, offering to settle with the injured insured for the amount of that verdict, and defeating the UIM carrier's subrogation rights when it fails to respond to notice of that settlement under *Schmidt*. The district court therefore erred in concluding that Grinnell waived its right to assert a subrogation claim against Moundson when it failed to substitute its draft, as is required by *Schmidt*.

## III.

The district court ordered Grinnell to pay UIM benefits to the Bitzans. Under the

terms of its policy, Grinnell is contractually obligated to pay UIM benefits if the damages awarded to its insured in the underlying tort action exceed the tort insurance limits, to the extent of its coverage. *Nordstrom*, 495 N.W.2d at 858–59. Because the damages awarded to the Bitzans exceeded Moundson's liability insurance limits, Grinnell is liable to pay the excess to the extent of its coverage. Once Grinnell pays those benefits, it will be entitled to subrogation rights or "all the rights of recovery of the person to who payment was made against another to the extent of the payment." *Id.* We therefore affirm that part of the district court's decision ordering Grinnell to pay the Bitzans UIM benefits.

## D E C I S I O N

The district court erred in determining that the parties had settled and that Grinnell, the UIM carrier, had received a constructive *Schmidt* notice that extinguished its subrogation rights. Grinnell's subrogation rights accrue upon payment to the Bitzans of UIM benefits.

**Affirmed in part and reversed in part.**